772 P.2d 228

**Harlan B. JENSEN, dba Jensen Construction, Plaintiff–Counterdefendant Respondent–Cross Appellant,**

**v.**

**Bartlett R. WESTBERG, Barton F. Bailey, Thomas A. Dobrusky, and Minidoka Associates, Defendants–Counterclaimants Appellants–Cross Respondents.**

No. 17072.

Court of Appeals of Idaho.

Dec. 6, 1988.

Kenneth L. Mallea, Mallea & Scrivner, Boise, for defendants-counterclaimants appellants-cross respondents.

R. Brad Masingill, Weiser, for plaintiff-counterdefendant respondent-cross appellant.

WALTERS, Chief Judge.

■ This is an appeal in an action for recovery of alleged claims existing between the partners in a business venture. The action was commenced without either the plaintiff or the defendants first having requested a complete accounting of the partnership affairs or a dissolution of the partnership.[1] The dispute presents two principal issues. First, did the trial court correctly determine the damages awardable upon breach by one partner of an agreement with the other partners to sell their interests in partnership property? Second, does substantial and competent evidence support the trial court's conclusion that the partners agreed to a particular definition of construction cost overruns to be borne by the partnership rather than by the general contractor? Before explaining our reasons for affirming the court below, we will review the background of this partnership.

In the summer of 1980, Bartlett Westberg, Barton Bailey, and Thomas Dobrusky enlisted Harlan Jensen, a building contractor, in their plan to construct in Rupert, Idaho, a senior citizens' housing development to be called "C" Street Manor. Jensen eventually agreed to become a general partner in Minidoka Associates, a limited partnership formed by the four individuals.[2] The development was to be financed by the Idaho Housing Agency (IHA). Jensen agreed to act as general contractor. Although his partners had experience with IHA procedures and rules, this was to be Jensen's first experience with IHA financing or with the underlying federal Housing and Urban Development Section 8 program.

IHA agreed to provide $866,154 in construction financing. Soon thereafter, Jensen called to his partners' attention the possibility of cost overruns. Following further discussion, Jensen agreed to go ahead with the construction. Later, in June 1981, Minidoka Associates received an offer from Western Capital Associates to purchase the partnership's interest in the nearly complete "C" Street Manor. However, Jensen was still concerned about his liability for any cost overrun. A Memorandum of Understanding resulted, which purported to settle the matter. Jensen initially granted his approval for the sale. But a few months later, in October 1981—before the proposed sale was closed—Jensen rescinded that approval, apparently for tax reasons. Because a ready, willing and able buyer had been found, the real estate broker who had negotiated the sale demanded a fee of $20,000. The broker eventually settled for $8,600. Later, when IHA disallowed certain costs of construction, Jensen received a lesser contribution for cost overruns from his partners than he had anticipated. Thereafter, Jensen exercised his right under the partnership agreement to

---

1. Ordinarily, partners may not maintain actions at law among themselves, as opposed to equitable actions, where the subject of the action relates to partnership transactions, unless there is a prior accounting or settlement of the partnership affairs. 59A AM.JUR.2d *Partnership* § 542 (1987). No party to this action, however, asserted that proposition to the court below. In fact, during the pendency of this litigation, the defendants filed a petition with another court for dissolution of the partnership. The latter court denied a motion by the petitioners for summary judgment, on the ground that there was an absence of proof of reasonable impracticability to continue the partnership business. The ultimate outcome of that action is not disclosed in the record before us, other than counsel's representation at oral argument in this case that the other action was "unsuccessful." In any event, the instant action primarily focused on the terms of alleged agreements between the partners and, although monetary damages were sought by all parties, the suit invoked the power of the court to formulate appropriate remedies, both legal and equitable, with respect to the fiduciary obligations existing between the parties. *See* 59A AM.JUR.2d *Partnership* § 623 (1987).

2. All four individuals were general partners. Westberg was also a limited partner. *See* I.C. § 53–212(1) ("A person may be a general partner and a limited partner in the same partnership at the same time.").

refuse any sale. Minidoka Associates still owned "C" Street Manor when this action was tried.

Jensen filed this action to collect the overrun expenses he deemed due. Westberg, Bailey and Dobrusky counterclaimed on behalf of themselves and the partnership for losses resulting from Jensen's failure to consummate the sale to Western Capital Associates. Initially, the district court granted summary judgment to Jensen on his claim. On appeal, we vacated that judgment and remanded the case with particular instructions. *See Jensen v. Westberg*, 109 Idaho 379, 707 P.2d 490 (Ct. App.1985) (*Jensen I*). We directed the district court:

> to determine, from all the evidence, whether the parties actually reached a genuine meeting of minds on "cost overruns." If they did, the court shall enter judgment conforming to their mutual intent. If they did not, the court should employ equitable principles to resolve the dispute.

*Id.* at 381, 707 P.2d at 492.

On remand, the district court bifurcated the trial. After taking evidence on Jensen's claim, the court found that there had been "a genuine meeting of the minds." The court construed the Memorandum of Understanding to limit recovery of cost overruns by Jensen to "the actual cost of construction as approved by the Idaho Housing Agency ... which exceeded the maximum contract amount which IHA would loan for construction." Accordingly, the court awarded only $6,990.93 of the $93,372.49 sought by Jensen from Minidoka Associates.

A trial followed on Minidoka Associates' counterclaim for damages resulting from Jensen's repudiation in 1981 of his agreement to sell the project. The court concluded that Jensen had breached a duty of good faith owed to his partners and also had breached a provision of the Memorandum of Understanding. The court held that Jensen was liable for resultant damages. However, because the court found that the fair market value of the partnership interests equaled the proposed selling

price on the day of the breach, and that subsequent market value declines were "not reasonably foreseeable by a prudent investor," the court limited damages to Westberg, Bailey and Dobrusky's share of the amount paid in settlement to the broker —i.e., $6,225.

Both parties have appealed, each contending that its award was erroneously low. Asserting four grounds, Minidoka Associates and Westberg, Bailey and Dobrusky challenge the minimal damages awarded for breach of the general agreement to sell. They argue first that the measure of damages should have included decreases in the value of the partnership's property subsequent to the breach. Next, they contend that recovery should have been allowed on a theory of tortious interference with contract. Third, they maintain that the trial court should have awarded attorney fees and costs to them. Finally, they submit that prejudgment interest should have been awarded. Jensen, in turn, contends no damages should have been awarded because the court erred by admitting evidence of the settlement with the broker.

By cross-appeal, Jensen attacks the court's small cost-overrun award, asserting that the evidence adduced at trial did not support the court's finding that the parties reached an agreement with respect to cost overruns, and, therefore, an equitable recovery should have been available. He also submits that the trial court did not take sufficient time to adequately review the documentary evidence. We turn first to the court's resolution of Jensen's cost-overrun claim.

## I

### A. *Cost Overruns*

When remanding this case in the earlier appeal, we directed the district court to determine whether the parties reached a genuine meeting of the minds with respect to their liability for "cost overruns." At a subsequent hearing each party contended that there was a meeting of minds, but differed as to the meaning of the agree-

ment. The court concluded that "the parties did reach a genuine meeting of the minds on cost overruns" and that

> [t]he mutual intent of the parties was to define a cost overrun to mean the actual cost of construction as approved by the Idaho Housing Agency (hereafter called IHA) which exceeded the maximum contract amount which IHA would loan for construction.

Because IHA disallowed $107,362.42 of the costs claimed by Jensen,[3] the court awarded only the remaining $9,321.24 of the amount claimed. On appeal, Jensen contends the evidence failed to support the court's conclusion that a meeting of minds occurred and, therefore, substantially greater equitable recovery should be available.

■ The question of whether there was a sufficient meeting of the minds to form an agreement is to be determined by the trier of fact. *Rasmussen v. Martin*, 104 Idaho 401, 659 P.2d 155 (Ct.App.1983). Findings of fact by a trial court will not be disturbed on appeal unless they are clearly erroneous. I.R.C.P. 52(a). Clear error, in turn, will not be deemed to exist if the findings are supported by substantial and competent, though conflicting, evidence. *Rasmussen v. Martin, supra.*

Here, the parties reduced their agreement to writing in the form of a Memorandum of Understanding. Nonetheless, Jensen contends that the terms of that agreement were so ambiguous that no meeting of the minds occurred. As we held in *Jensen I,* the language of the agreement was indeed ambiguous. But the district judge made a finding as to the underlying mutual intent of the parties. The question is whether substantial evidence supports that finding.

At trial, Jensen expressed the belief that he would be reimbursed for all reasonable or actual costs, and disclaimed agreeing to IHA approval as a condition precedent to reimbursement from the partnership. Bailey, Westberg, and Dobrusky testified that they understood that only cost overruns

allowed or approved by IHA would be borne by the partnership. Bailey described one of the partnership's meetings on this point:

> [Bailey]. At that meeting Mr. Jensen's concern was—he asked the question of Mr. Machacek [an IHA official] what would happen if there were cost overruns on this project.
> [Minidoka's Counsel]. What if anything did Mr. Machacek reply?
> A. Well, Mr. Machacek replied, in essence, that's a problem for the owners and something the Idaho Housing Agency doesn't get involved with.
> Q. And at that point in time what if anything did you say?
> A. Well, at that point in time I said that if there were cost overruns and if they were approved by the Idaho Housing Agency, we, as we had in our other projects, would agree to pay them.
> Q. What if anything did Mr. Jensen say to that?
> A. He said that was super, great. Let's get on with it.

Westberg and Dobrusky also testified that Jensen agreed to IHA approval as a condition of reimbursement. Gary Machacek, an IHA "director of multi-family development" at that time, corroborated this testimony.

■ Thus, the question whether the parties' minds' met was reduced to one of credibility. The credibility of witnesses is a matter for the trier of fact who has the opportunity to observe those witnesses. The trial court apparently found the testimony of Bailey, Westberg, and Dobrusky to be more credible than that of Jensen. On questions of credibility, we will not substitute our judgment for that of the trial court. *Salazar v. Tilley*, 110 Idaho 584, 716 P.2d 1356 (Ct.App.1986). This standard reflects the view that deference must be accorded to the trial judge's opportunity to assess and weigh the credibility of witnesses. *Rueth v. State*, 103 Idaho 74, 644 P.2d 1333 (1982). Such is the case

---

3. The majority of the costs disallowed were subcontractor profits deemed excessive by IHA, partly because IHA officials believed Jensen would be sharing in those profits.

here. Accordingly, we hold that court's findings are supported by substantial, albeit controverted, evidence.

### B. *Time Elapsed Until the District Court's Decision*

 Jensen also calls our attention to the brief time period between the close of the trial on this subject and the court's announcement of its decision. The transcript of the trial reveals that the court issued a decision from the bench only thirty minutes after hearing the closing arguments of the parties. Written findings of fact and conclusions of law were drafted and entered later.

Jensen argues that in such a short period of time the court could not have reviewed the extensive documentary evidence presented. Jensen has presented us with no authority suggesting that such brief consideration of a case constitutes error *per se*. In any event, we are not persuaded that the circumstances in this case suggest any misconduct by the court. The court had an opportunity to review the exhibits, especially the critical Memorandum of Understanding, during the trial. As explained above, resolution of the controlling issue ultimately turned upon the credibility of the testimony heard by the court. Reaching such a decision would not necessarily require extensive deliberation. We hold that the court did not err by promptly announcing its decision.

### II

Next, we address the parties' challenges to the amount of the court's award to Minidoka Associates for Jensen's refusal to complete the sale of "C" Street Manor to a third party, Western Capital Associates. As mentioned above, after finding that Western Capital's offer was equal to the value of the property at the time of the breach in 1981, the court awarded as damages only $6,225 (plus prejudgment interest)—the amount paid to settle a claim of commission by the real estate broker engaged to sell the project.

### A. *Subsequent Lost Value*

 Jensen's partners contend the measure of damages employed by the court was incorrect under the circumstances. Apparently the value of "C" Street Manor fell precipitously, during the period between Jensen's refusal to sell in 1981 and the trial in 1987, due to changes in federal income tax laws in 1986. Westberg, Bailey and Dobrusky contend they are entitled to damages measured by the difference in value between the selling price to Western Capital in 1981 and the value of "C" Street Manor at the time of trial in 1987, an amount they assert exceeds $250,000. In support of their contention, they refer to cases involving breaches of vendor-purchaser agreements and, by analogy, to Article 2 of the Uniform Commercial Code. Jensen counters that he should not be liable for an unforeseeable, subsequent decline in value which did not result directly from his repudiation of the agreement to sell.

The question framed by these conflicting assertions is whether the district court erred by concluding that Westberg, Bailey and Dobrusky's payment to the broker was the only compensable harm directly resulting from Jensen's breach. The court found that the obligation for the broker's commission arose as a direct consequence of Jensen's breach. In addition, the district court found that—at the time the contract of sale of the partnership property to Western Capital was entered into in 1981—it was not reasonably foreseeable or within the contemplation of the parties that a breach by one of the partners could produce consequential damage in the form of reduced market value some five years later, when Congress amended the tax laws in 1986.

In the absence of a special agreement to the contrary, contract damages are recoverable only for the foreseeable, direct consequence of a breach. *Traylor v. Henkels and McCoy, Inc.*, 99 Idaho 560, 585 P.2d 970 (1978). The inquiry whether damages allegedly resulting from a breach of contract were reasonably foreseeable or within the contemplation of the parties at the time the contract was formed is a question of

fact. *Id.* On review, we will not set aside a factual finding of the trial court unless that finding is unsupported by substantial evidence and is therefore clearly erroneous. I.R.C.P. 52(a); *Rasmussen v. Martin*, 104 Idaho 401, 659 P.2d 155 (Ct.App.1983). In this case, the court's findings are supported by substantial evidence. They will not be disturbed.

## B. *Claim of Tortious Interference with Contract*

■ Alternatively, Westberg, Bailey and Dobrusky contend that the district court erred by rejecting recovery under their theory of tortious intentional interference with contract. The elements of such a claim have been described by our Supreme Court as follows:

> (1) A prima facie case of the tort is established where the plaintiff adduces proof of these elements: (a) the existence of a contract, (b) knowledge of the contract on the part of the defendant, (c) intentional interference causing a breach of the contract, and (d) injury to the plaintiff resulting from the breach.

*Barlow v. International Harvester Co.*, 95 Idaho 881, 893, 522 P.2d 1102, 1114 (1974). Malice in the sense of ill will is not required to establish a prima facie case. *Id.*

Despite finding that Jensen's repudiation of his agreement with his partners led to a breach of the partnership contract of sale with Western Capital, the district court rejected Westberg, Bailey and Dobrusky's theory of intentional interference because the court found Jensen was motivated only by his interest in retaining tax benefits. Westberg, Bailey and Dobrusky's counterclaim raised only contract issues. Jensen has not responded to his partners' interference argument.

■ For liability to arise from interference with another's performance of a contract, that interference must be improper. *See* RESTATEMENT (SECOND) OF TORTS § 766 A, Comment e (1977). Section 767 of the RESTATEMENT describes the method for determining whether interference is improper as follows:

In determining whether an actor's conduct in intentionally interfering with a contract or a prospective contractual relation of another is improper or not, consideration is given to the following factors:

> (a) the nature of the actor's conduct,
> (b) the actor's motive,
> (c) the interests of the other with which the actor's conduct interferes,
> (d) the interest sought to be advanced by the actor,
> (e) the social interests in protecting the freedom of action of the actor and the contractual interests of the other,
> (f) the proximity or remoteness of the actor's conduct to the interference and
> (g) the relations between the parties.

■ Weighing the above factors in each individual case involves a complex interplay between overlaying public interests. *See generally* RESTATEMENT Comment j to § 767. After examining the various factors as they relate to the case at hand, we are convinced that the district court did not err by foreclosing the tort recovery and limiting Westberg, Bailey and Dobrusky's cause of action in their contract-based claim.

Here, Jensen's conduct, although in breach of his earlier agreement with his partners, would not otherwise have been wrongful. According to the court's findings, Jensen was motivated by his own financial interests. His acts caused little immediate economic loss, but were only ill-conceived when viewed in terms of the long-term consequences. Although society has an interest in seeing contracts of sale performed, both the wronged sellers and the potential buyer have alternative avenues of relief grounded in contract-breach recovery. Accordingly, we hold that the district court did not err by denying Westberg, Bailey and Dobrusky's claim alleging interference with performance of a contract.

## C. *Prejudgment Interest*

Westberg, Bailey and Dobrusky also seek prejudgment interest on the amount claimed. The district court awarded pre-

judgment interest on the broker's fee. Having concluded that the court did not err with respect to the measure of damages, we need not address Westberg, Bailey and Dobrusky's assertion that other prejudgment interest was also due them.

### D. *Attorney Fees*

 Westberg, Bailey and Dobrusky next contend the district court should have awarded attorney fees arising from the trial of their counterclaim, pursuant to I.C. § 12–121. The determination whether to award fees under this section is committed to the discretion of the trial court. *Soria v. Sierra Pacific Airlines, Inc.,* 111 Idaho 594, 726 P.2d 706 (1986), *later appeal affirmed,* 114 Idaho 1, 752 P.2d 603 (1987). An award is only proper when an action was brought or defended frivolously, unreasonably or without foundation. *Id.; see* I.R.C.P. 54(e)(1). Moreover, section 12–121 authorizes an award of attorney fees only to prevailing parties. *Barlow's, Inc. v. Bannock Cleaning Corp.,* 103 Idaho 310, 647 P.2d 766 (Ct.App. 1982). Here, the district court concluded that neither party had prevailed. In view of the large claim and minimal recovery by these counterclaimants, we cannot say that the district court abused its discretion by declining to award fees.

### III

██ Finally, we confront Jensen's contention that not even the broker's fee should have been awarded to his partners because evidence of their settlement with the broker was improperly admitted. Over Jensen's objections, the district court admitted documentary evidence of a settlement agreement between the broker and the four partners indicating that $600 in checks and $8,000 in promissory notes had been forwarded to the broker.

Jensen asserts that admission of the evidence, upon which the district court relied to determine the amount of the damages due Westberg, Bailey and Dobrusky, was contrary to the Idaho Rule of Evidence 408. That rule provides:

*Compromise and offers to compromise.*—Evidence of (1) furnishing, offering, or promising to furnish, or (2) accepting, offering, or promising to accept, a valuable consideration in compromising or attempting to compromise a claim which was disputed as to either validity or amount, is not admissible to prove liability for, invalidity of, or amount of the claim or any other claim. Evidence of conduct or statements made in compromise negotiations is likewise not admissible. This rule does not require the exclusion of any evidence otherwise discoverable merely because it is presented in the course of compromise negotiations. This rule does not require exclusion if the evidence is offered for another purpose, such as proving bias or prejudice of a witness, negativing a contention of undue delay, or proving an effort to obstruct a criminal investigation or prosecution.

The Idaho rule is nearly identical to the F.R.E. 408. The question presented by this case is whether evidence of the amount of an actual settlement with a third party is admissible to show the amount of out-of-pocket damages suffered by a plaintiff. Our analysis of the rule is directed to determining whether this evidence falls within the scope of the rule or is evidence "offered for another purpose."

We begin by noting that the purpose of the rule is to foster a strong public policy favoring out-of-court settlement of disputes by precluding the admission of statements and offers made in compromise negotiations. Comment to I.R.E. 408. Two leading commentators on the federal rules of evidence provide the following examples of admissible settlement evidence:

For example, if suit is brought for breach of the settlement contract, Rule 408 does not prevent the plaintiff from proving the agreement. By parity of reasoning, the same result should follow when the defense to the original claim is predicated on a compromise; e.g., when the defendant pleads the compromise as a release, accord and satisfaction, or novation. Although it can be argued that this use of the compromise involves

proof of the "invalidity of the claim," it does so not by using the compromise as circumstantial evidence of the opponent's belief in the invalidity of the claim but as proof of an act whose legal effect is to extinguish his right to recover. Similarly, compromises with third persons can be proved when their legal effect is to release the defendant from liability or to reduce the amount of damages he must pay. 23 C. WRIGHT AND K. GRAHAM, JR., FEDERAL PRACTICE AND PROCEDURE, 281–82 (1980).

In a case analogous to the one before us, the Arizona Court of Appeals held that—despite Arizona's comparable rule—evidence of a settlement agreement between a real estate buyer and a seller was admissible in an action to determine whether the broker's fee was due and owing. *Campbell v. Mahany*, 127 Ariz. 332, 620 P.2d 711 (Ct.App.1980). The court reasoned that the evidence was not offered for one of the purposes proscribed by the rule and, therefore, did not fall within the scope of the rule.

Our examination of the record in this case and consideration of the purpose of the rule leads us to a comparable conclusion. Although offered to show that a settlement had been reached, the evidence was offered not to prove that Jensen had admitted liability for the broker's claim—but to establish that costs actually were incurred by his partners in satisfying that settlement. We believe such settlement evidence falls outside the scope and purpose of the rule. In fact, to hold otherwise would require that a party litigate a third party's claim to a judgment and recovery by impleading and seeking indemnification from the other party—a procedure directly contrary to the purpose of the rule. Therefore, we hold that the court did not err by admitting evidence of out-of-pocket expenses paid in settlement to a third party.

## CONCLUSION

As set forth above, we affirm the district court's judgment in all respects. As each party has prevailed with respect to the other's claims in this proceeding, we award no fees and decline to award costs to either party.

BURNETT and SWANSTROM, JJ., concur.