184 P.3d 844

**BECO CONSTRUCTION COMPANY, INC., Plaintiff–Appellant,**

v.

**J–U–B ENGINEERS, INC., Defendant–Respondent.**

No. 33378.

Supreme Court of Idaho,
Boise, April 2008 Term.

May 2, 2008.

McGrath Meacham & Smith, PLLC, Idaho Falls, for appellant. Bryan D. Smith argued.

Capitol Law Group, PLLC, Gooding, for respondent. Daniel A. Nevala argued.

J. JONES, Justice.

BECO Construction filed suit against J–U–B Engineers, claiming that J–U–B had delayed BECO's work on a construction project, thereby subjecting it to liability for liquidated damages. The district court dismissed BECO's complaint on summary judgment and awarded attorney fees to J–U–B. BECO appeals the dismissal of its claim that J–U–B intentionally interfered with its construction contract, as well as the fee award. We affirm the grant of summary judgment but vacate a portion of the fee award.

## I.

In November 2003, the Pocatello Development Authority hired J–U–B Engineers, Inc., to serve as the qualified design professional on a development project in downtown Pocatello. In June 2004, the City of Pocatello awarded a Construction Contract to BECO Construction Company, Inc., to serve as the general contractor for the first phase of the project, which consisted of "reconstructing the pavement, sidewalk, installing street lights, installing storm sewer, installing waterlines, grading and landscaping." In this contract, BECO and the City agreed that the project would be substantially completed within 90 days of commencement and totally completed within 20 days thereafter. The Construction Contract provided for liquidated damages in the event of BECO's failure to complete the project within this timeframe.

The Construction Contract provided that J–U–B, as the engineer, would act as the City's representative, and specifically delineated J–U–B's role throughout the project. In general, J–U–B's role included visiting the construction site, observing the work performed, and reporting back to the City on the progress and quality of BECO's work on the project. In addition, the contract authorized J–U–B to make recommendations to the City as to whether to allow certain changes in the progress and methods of the work performed. It expressly allowed J–U–B to perform testing and inspections at its discretion to determine the quality of the work performed. Finally, the contract specified that J–U–B would review and approve final payment upon completion of the project. In essence, J–U–B acted as the City's representative throughout the project.

BECO commenced its initial work on June 9, 2004, with full production proceeding on June 14, 2004. When BECO requested final payment, J–U–B informed the City that BECO had not completed its work, and recommended the City not make final payment. BECO filed a complaint against the City and J–U–B as codefendants, claiming breach of contract with regard to both defendants, neg-

ligence with regard to both defendants, and intentional interference with contract with regard to J–U–B. The latter claim alleged that J–U–B's interference with its work significantly delayed BECO's ability to make timely progress, which ultimately resulted in BECO incurring substantial liquidated damages. In June 2005, BECO and the City reached an agreement resolving the issues between them, which left only BECO's claims against J–U–B.

J–U–B filed its first motion for summary judgment on July 27, 2005. BECO withdrew its breach of contract claim, and the district court granted summary judgment to J–U–B regarding its negligence claim.[1] However, the district court denied summary judgment on the issue of intentional interference with contract. J–U–B thereafter filed a second motion for summary judgment, contending further discovery proved BECO could not establish a genuine issue of material fact that would enable BECO to prevail on its intentional interference claim. This time, the district court granted summary judgment to J–U–B. The court concluded that BECO failed to offer any admissible evidence to establish an issue of material fact as to whether J–U–B interfered with BECO's contract with the City.

BECO moved for reconsideration but the district court affirmed its prior grant of summary judgment to J–U–B. The district court also awarded attorney fees to J–U–B pursuant to I.C. § 12–120(3). BECO appealed the court's grant of summary judgment on its intentional interference claim, as well as the fee award.

## II.

In this case, we consider whether the district court erred when it granted summary judgment to J–U–B with regard to BECO's intentional interference with a contract claim; whether the district court erred when it applied I.C § 12–120(3) to award attorney fees to J–U–B; and whether the district court abused its discretion by awarding J–U–B excessive attorney fees.

1. BECO does not appeal this holding.

## A.

When a party appeals a district court's grant of summary judgment, this Court applies the same standard the district court used when it ruled on the motion. *Carnell v. Barker Mgmt., Inc.,* 137 Idaho 322, 326, 48 P.3d 651, 655 (2002). Summary judgment is proper "if the pleadings, depositions, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Idaho R. Civ. P. 56(c). We must construe all disputed facts in favor of the nonmoving party, and draw all reasonable inferences we can draw from the record in favor of the nonmoving party. *Carnell,* 137 Idaho at 327, 48 P.3d at 656. Summary judgment is appropriate where the nonmoving party bearing the burden of proof fails to make a showing sufficient to establish the existence of an element essential to the party's case. *Id.*

## B.

BECO alleges J–U–B's actions throughout the construction project exceeded the scope of J–U–B's responsibilities as the project engineer, interfered with BECO's contract with the City, and caused costly delay in BECO's ability to meet its contractual deadlines. BECO asserts its evidence regarding three disputed issues was sufficient to preclude summary judgment. First, BECO alleges J–U–B interfered with the contract by improperly testing asphalt/aggregate compaction with the intent to promote failing tests. Second, it alleges J–U–B interfered by acting outside its contractual duties and unreasonably shutting down the project. Third, it alleges J–U–B interfered by unreasonably delaying commencement of the project. BECO claims questions of material fact exist on each of these issues. It also argues the district court improperly weighed conflicting evidence in reaching its decision in that it compared the affidavit of plaintiff's expert with that of defendant's expert.

A prima facie case of tortious interference with contract exists where a plaintiff establishes the existence of a contract, knowledge of the contract on the part of the defendant, intentional interference causing breach of the contract, and injury to the plaintiff resulting from the breach. *Barlow v. Int'l Harvester Co.,* 95 Idaho 881, 893, 522 P.2d 1102, 1114 (1974). J–U–B concedes the first two elements. The parties' arguments on appeal focus primarily on the third element—whether J–U–B intentionally and improperly interfered with the contract between BECO and the City.

A plaintiff may show the defendant's interference with another's contractual relation is intentional if the actor desires to bring it about or "if he knows that the interference is certain or substantially certain to occur as a result of his action." *Highland Enter., Inc. v. Barker,* 133 Idaho 330, 340, 986 P.2d 996, 1006 (1999) (citing Restatement (Second) of Torts § 766B cmt. d (1977)). Intent can be shown even if the interference is incidental to the actor's intended purpose and desire "but known to him to be a necessary consequence of his action." *Highland Enter., Inc.,* 133 Idaho at 340, 986 P.2d at 1006 (citing Restatement (Second) of Torts § 766 cmt. j (1977)). In addition, for liability to arise from intentional interference with another's performance of a contract, that interference must be improper. *Jensen v. Westberg,* 115 Idaho 1021, 1027, 772 P.2d 228, 234 (Ct.App.1988) (citing Restatement (Second) of Torts § 766A cmt. e (1977)). Section 767 of the Restatement (Second) of Torts enumerates certain factors a court may consider to determine whether interference is improper. The Restatement provides:

> In determining whether an actor's conduct in intentionally interfering with a contract or a prospective contractual relation of another is improper or not, consideration is given to the following factors:
>
> (a) the nature of the actor's conduct,
>
> (b) the actor's motive,
>
> (c) the interests of the other with which the actor's conduct interferes,
>
> (d) the interest sought to be advanced by the actor,
>
> (e) the social interests in protecting the freedom of action of the actor and the contractual interests of the other,

(f) the proximity or remoteness of the actor's conduct to the interference and

(g) the relations between the parties.

Restatement (Second) of Torts § 767 (1979), *cited in Jensen,* 115 Idaho at 1027, 772 P.2d at 234. Weighing the above factors in each individual case involves a complex interplay between overlaying public interests. *Id.* In order for BECO to prevail on its claim, it must establish not only that J–U–B acted with the requisite intent to interfere with performance of the contract, but also that such intentional interference was improper.

BECO submitted a number of affidavits in an attempt to show there was a material issue of fact as to whether J–U–B intentionally engaged in improper action, which was substantially certain to cause BECO delay in its performance. Among other things, a BECO affiant contended that a J–U–B employee was unaware of how to properly test asphalt laid by BECO and that he conducted his testing in such a manner as to obtain failing results. J–U–B's expert submitted an affidavit countering this and the other contentions asserted by BECO. In reaching its decision, the district court relied upon the affidavit of J–U–B's expert to find BECO failed to establish a material issue of fact with regard to its claims. The district court, rather than comparing affidavits submitted by the two sides and deciding who was correct, should have focused on the affidavits submitted by BECO. BECO's affidavits failed to contain admissible factual evidence supporting BECO's claim of an improper purpose. But, rather than teasing the conclusory allegations out of the affidavits, we find the decision is supportable on an alternate theory, which the district court mentions but does not specifically rely upon in reaching its conclusion. "It is well established that this Court will use the correct legal theory to affirm the correct decision of a district court even when it is based on an erroneous legal theory." *J.R. Simplot Co., Inc. v. Idaho State Tax Comm'n,* 120 Idaho 849, 853, 820 P.2d 1206, 1210 (1991).

In granting summary judgment to J–U–B, the district court noted that J–U–B performed the testing for the City's benefit to determine if the work was proceeding in accordance with the requirements of the Construction Contract. J–U–B had argued that its actions were justified because it was acting to safeguard the City's interests in accordance with its responsibilities under the contract documents. None of the participants in the district court proceedings directly stated that a party may not tortiously interfere with his own contract. However, in observing that J–U–B was acting under the contract for the City's benefit, the district court was merely acknowledging a fact that is inescapable from a review of the record—that J–U–B is not a stranger to the Construction Contract.

As this Court has stated, the general rule is that a party cannot tortiously interfere with its own contract. *Ostrander v. Farm Bureau Mut. Ins. Co. of Idaho,* 123 Idaho 650, 654, 851 P.2d 946, 950 (1993). Since a party cannot interfere with its own contract, it follows that an action for intentional interference with contract can only lie against a third party. In *Ostrander,* we applied this rule to an agency situation, holding "the actions of an agent are the actions of the corporation; an agent is only liable for actions which are outside its scope of duty to the corporation." *Ostrander,* 123 Idaho at 654, 851 P.2d at 950. Since the defendant's alleged actions fell within the scope of his authority as an agent, there was no third party to the contract, and Ostrander could not state a claim for tortious interference with contract. *Id.* It follows that a claim for tortious interference with contractual relations requires proof that the defendant is a stranger to the contract with which the defendant allegedly interfered and to the business relationship giving rise to the contract. *See* 44B Am.Jur.2d Interference § 7. *See also Jenkins v. Boise Cascade Corp.,* 141 Idaho 233, 243, 108 P.3d 380, 390 (2005) ("Gibbs and Irish can be liable in their individual capacities only if they acted outside the scope of their duties with Boise Cascade.... As there is no dispute between the parties that Gibbs and Irish were acting within the course and scope of their employment with Boise Cascade in these alleged activities, there is no 'third party' to interfere

with the contract."); *Leon v. Boise State Univ.*, 125 Idaho 365, 369–70, 870 P.2d 1324, 1328–29 (1994) (summary judgment proper where plaintiff did not allege defendant took any actions outside her capacity as department chair).

In this case, J–U–B acted as the City's representative under the terms of the Construction Contract. That contract, entered into between the City and BECO, expressly delineates J–U–B's role of acting as the City's representative throughout the project. For example, the contract provides "OWNER shall issue all communications to CONTRACTOR through ENGINEER," and "ENGINEER will be OWNER's representative during the construction period." There are numerous contract provisions which provide J–U–B with sufficient authority to monitor and test BECO's progress. Under the contract, J–U–B has broad authority to perform such testing. For example, Section 9.02 of the Construction Contract provides:

> ENGINEER will make visits to the Site at intervals appropriate to the various stages of construction as ENGINEER deems necessary in order to observe as an experienced and qualified design professional the progress that has been made and the quality of the various aspects of CONTRACTOR'S executed Work. . . .

Section 9.06 provides that:

> ENGINEER will have authority to disapprove or reject Work which ENGINEER believes to be defective, or that ENGINEER believes will not produce a completed Project that conforms to the Contract Documents or that will prejudice the integrity of the design concept of the completed Project as a functioning whole as indicated by the Contract Documents. ENGINEER will also have authority to require special inspection or testing of the Work . . .

These provisions, along with a number of others, clearly provide J–U–B with broad discretionary authority to monitor BECO's progress, and encompass those actions BECO complains of here. Although J–U–B

was not a party to the Construction Contract in the traditional sense, it acted as the City's agent by the very terms of the contract between BECO and the City. This case falls within the purview of *Ostrander* where an intentional interference claim was found not to lie against an agent of a party who was acting within the scope of his authority. *See Ostrander*, 123 Idaho at 654, 851 P.2d at 950. Since J–U–B was an agent of a party to the contract and was acting for the benefit of such party, it is not a stranger to the contract and therefore cannot be liable for tortious interference with such contract.

### C.

The district court granted J–U–B attorney fees pursuant to I.C. § 12–120(3). BECO argues the district court erred when it granted fees pursuant to § 12–120(3) because J–U–B did not cite this statute in its initial motion for fees. Alternatively, BECO argues § 12–120(3) does not apply to the facts of this case. Finally, BECO argues that even if this Court applies § 12–120(3) to this case, the district court erred in determining the amount of fees, so the Court must remand the matter to the district court to determine the proper amount of fees.

In its Motion for Attorney Fees and Sanctions, J–U–B cited I.C. § 12–123, Idaho R. Civ. P. 11(a)(1), and Idaho R. Civ. P. 56(g) as the bases for its motion. However, in its Memorandum of Costs and Fees, J–U–B's attorney claimed that "J–U–B is entitled to an award of reasonable attorney's fees and costs under I.C. §§ 12–120(3) and 12–121, and I.R.C.P. 54(e)(1)."[2] BECO filed a motion to disallow J–U–B's request for fees and costs, arguing that the fees and costs were outrageously excessive. The district court held J–U–B was not entitled to fees under I.C. § 12–123, but that J–U–B was entitled to an award pursuant to § 12–120(3).

BECO cites *Bingham v. Montane Resource Associates*, 133 Idaho 420, 424, 987 P.2d 1035, 1039 (1999), for the proposition that "in order to receive an award of attor-

---

**2.** Although BECO argues in its briefing that this document was not filed until *after* its motion to disallow, J–U–B filed the Memorandum of Fees and Costs, which refers to I.C. § 12–120(3), on June 16, the same day it filed its Motion for Attorney Fees and Sanctions.

ney fees, a party must actually assert the specific statute or common law rule on which the award is based." However, in *Bingham*, this Court denied attorney fees because "*[a]t no point* did Montane assert that it was entitled to fees under I.C. § 45–413." *Bingham*, 133 Idaho at 423, 987 P.2d at 1038 (emphasis added). In this case, J–U–B did cite § 12–120(3) as the basis for attorney fees in its Memorandum of Costs and Fees. In addition, the district court addressed the potential application of this statute at the fee hearing, at which attorneys for both parties were present and argued before the district court:

> The Court. Okay. Now, as far as attorney fees go, though, in the memorandum of fees and costs on the second page, you're requesting attorney fees under 12–120(3) and 12–121 in conjunction with Idaho Civil Rules of Procedure 54(e)(1); right?
>
> Mr. Arkoosh: Yes, Your Honor.

Since J–U–B did raise § 12–120(3) as a basis for attorney fees below, and BECO did have adequate notice of this claim in order to defend against it, BECO's claim that the court erred in awarding fees on this basis is unavailing.

■■■■ Next, BECO argues the district court erred when it applied § 12–120(3) to the facts of this case. When an award of attorney fees depends on the interpretation of a statute, the standard of review for statutory interpretation applies. *Stout v. Key Training Corp.*, 144 Idaho 195, 196, 158 P.3d 971, 972 (2007). "The interpretation of a statute is a question of law over which this Court exercises free review." *Id.* (quoting *Carrier v. Lake Pend Oreille Sch. Dist. # 84*, 142 Idaho 804, 807, 134 P.3d 655, 658 (2006)). We must construe a statute to give effect to the Legislature's intent. *Id.* at 197, 158 P.3d at 973.

I.C. § 12–120(3) compels an award of attorney fees to the prevailing party in any civil action to recover on a contract for services or "in any commercial transaction." I.C. § 12–120(3). When this action was initiated, BECO asserted a breach of contract claim against J–U–B and that claim was litigated until August 15, 2005, when BECO dismissed the claim. BECO asserts that, at most, J–U–B is entitled to recover the $33,661.92 in fees that were incurred to this point in defending the action. However, BECO asserts there was neither a contract claim nor a commercial transaction that would support a fee award under I.C. § 12–120(3) after that point in the litigation.

■■■ A "commercial transaction" is defined in Section 12–120(3) as "all transactions except transactions for personal or household purposes." Id. An award of attorney fees under this section is proper "if the commercial transaction is integral to the claim, and constitutes the basis upon which the party is attempting to recover." *Blimka v. My Web Wholesaler, LLC*, 143 Idaho 723, 728, 152 P.3d 594, 599 (2007) (quoting *Brower v. E.I. DuPont De Nemours and Co.*, 117 Idaho 780, 784, 792 P.2d 345, 349 (1990)). BECO claims there was no commercial transaction between these parties. The case at bar clearly involved a "commercial transaction" within the meaning of I.C. § 12–120(3), but the transaction was between the City and BECO and not between J–U–B and BECO. J–U–B was acting as the City's agent in the transaction but there was no commercial relationship between J–U–B and BECO. Therefore, I.C. § 12–120(3) does not provide the basis for a fee award to J–U–B after the point where the contractual claim was dismissed. Up to that point, J–U–B is entitled to its fees for defending against the contract claim. After that point, J–U–B is not entitled to its fees because there is no commercial transaction between the parties. The fact that J–U–B may have been the City's agent is not sufficient to establish an independent commercial transaction between J–U–B and BECO. We therefore vacate the fee award and remand this case for determination and award of the amount of fees J–U–B incurred defending BECO's contract claim.

### III.

We affirm the district court's grant of summary judgment with regard to BECO's claim for intentional interference with contract, but on alternative grounds. We remand the attorney fees issue for determination and award of the fees J–U–B incurred in defend-

ing BECO's contract claim. We decline J–U–B's request for fees on appeal because we affirm the district court's decision on alternate grounds. Costs to J–U–B.

Chief Justice EISMANN, and Justices BURDICK, W. JONES and HORTON concur.

