# IN THE SUPREME COURT OF THE STATE OF IDAHO

## Docket No. 50953-2023

STREAMLINE BUILDERS, LLC, an Idaho limited liability company; RICHARD SWOBODA,

    Third Party Plaintiffs-Respondents,

v.

STEVEN CHASE, an individual,

    Third Party Defendant-Appellant.

_____

AUDREY CHASE, an unmarried woman,

    Plaintiff-Counterdefendant,

v.

STREAMLINE BUILDERS, LLC, an Idaho limited liability company; RICHARD SWOBODA, GREG WASHINGTON, PHEBE WASHINGTON, WINDERMERE/COEUR D'ALENE REALTY, INC., an Idaho corporation,

    Defendants-Counterclaimants,

and

JANE DOE SWOBODA, SCOTT SKOLRUD, JESSICA SKOLRUD, TITLEONE CORPORATION, an Idaho corporation; LAND TITLE AND ESCROW, INC., an Idaho corporation; VISTA REAL ESTATE CORPORATION, a California corporation; and DOES 1-10,

    Defendants.

_____

STREAMLINE BUILDERS, LLC, an Idaho limited liability company; and RICHARD SWOBODA,

Coeur d'Alene, September 2024 Term

Opinion filed: December 5, 2024

Melanie Gagnepain, Clerk

|                                                      |     |
|------------------------------------------------------|-----|
| Plaintiffs,                                          | )   |
|                                                      | )   |
|                                                      | )   |
| v.                                                   | )   |
|                                                      | )   |
| STEVEN CHASE, an individual,                         | )   |
|                                                      | )   |
| Defendant.                                           | )   |
|                                                      | )   |
| JONATHON D. HALLIN, successor trustee                | )   |
| under the Deed of Trust, dated May 18, 2018,         | )   |
| as instrument no. 2643971000,                        | )   |
|                                                      | )   |
| Plaintiff,                                           | )   |
|                                                      | )   |
| v.                                                   | )   |
|                                                      | )   |
| AUDREY CHASE, an unmarried woman; and                | )   |
| STREAMLINE BUILDERS, LLC, an Idaho                   | )   |
| limited liability company,                           | )   |
|                                                      | )   |
| Defendants.                                          | )   |
|                                                      | )   |
| AUDREY CHASE, an unmarried woman,                    | )   |
|                                                      | )   |
| Plaintiff,                                           | )   |
|                                                      | )   |
| v.                                                   | )   |
|                                                      | )   |
| STEFAN SMITH, DONALD R. SMOCK, JR.                   | )   |
| and JENNIFER SMOCK, husband and wife,                | )   |
|                                                      | )   |
| Defendants.                                          |     |

Appeal from the District Court of the First Judicial District of the State of Idaho, Kootenai County. Barry McHugh, District Judge.

The decision of the district court is affirmed.

Stoel Rives LLP, Boise; and Bristol George, Coeur d'Alene, for Appellant Steven Chase. Wendy J. Olson argued.

Lake City Law Group, PLLC, Coeur d'Alene, for Respondents Streamline Builders, LLC, and Richard Swoboda. Jason Scott Wing argued.

———————————

2

ZAHN, Justice.

Steven Chase appeals the district court's denial of his motion for a directed verdict on a claim for tortious interference with prospective economic advantage. The tortious interference claim concerns a failed real estate transaction between Steven's mother, Audrey Chase, and Streamline Builders, LLC, owned by Richard Swoboda, for the construction of a home. Steven accompanied his mother to meetings, communicated with Swoboda and realtors during the construction process, and performed an inspection of the home. At closing, the parties disagreed on how much money to hold back for uncompleted items and therefore never closed the sale. Following the failed closing, several lawsuits were filed.

This appeal concerns Streamline and Swoboda's suit against Steven for tortious interference with prospective economic advantage. The suit went to a jury trial and, at the conclusion of Streamline and Swoboda's case in chief, Steven moved for a directed verdict. The district court denied the motion and the jury returned a verdict in favor of Streamline and Swoboda. Steven argues that the district court erred in denying his motion for a directed verdict because he was acting as his mother's agent and therefore he could not be liable for tortious interference with prospective economic advantage. We hold that Steven failed to raise his agency argument below and failed to preserve the issue for appeal. We therefore affirm the judgment of the district court.

## I.     FACTUAL AND PROCEDURAL BACKGROUND

### A.  The failed real estate transaction

In 2017, Audrey Chase moved in with her son, Steven Chase, and his wife in Post Falls. On March 20, 2018, Audrey contracted with Streamline Builders, LLC, owned by Richard Swoboda, for the construction of a new home. Steven and Audrey testified at trial that throughout the real estate transaction, Audrey's family, including Steven, "assisted" Audrey by reviewing documents with her, sending text messages and emails on her behalf, and accompanying her to meetings and walkthroughs. Steven, who has experience in construction and home inspections, would visit the home as it was being built and identify alleged construction defects, which he relayed to Audrey. Audrey and her daughter-in-law subsequently prepared a five-page "punch list" of items for Swoboda to finish or fix before closing.

Steven claimed that his inspections and communications regarding the transaction and construction were done on Audrey's behalf and at her direction. However, email and text communications from Steven were often signed in his name alone. One example includes an email

3

sent by Steven on July 26, 2018, to Audrey's real estate agent expressing dissatisfaction with parts of the transaction. Included in the email were the following statements: "[t]his is bullshit"; "[c]over your buddies all you like but you should not have underestimated my ability to protect my family"; "there is a long list of items I will be identifying"; and "[t]his should have been a fun project for an 87 year old, not a fight for her life." During the deposition phase of litigation, when asked about his intent in sending the email, Steven claimed it was to do "[e]xactly what we're doing now."

Notwithstanding Steven's complaints, construction of the house progressed more quickly than anticipated, and the parties agreed to move the closing date up from September 28, 2018, to August 22, 2018. Swoboda testified that it was Steven who asked to move the closing date up. Steven, on the other hand, testified that he had nothing to do with choosing the new date.

The transaction failed to close after the parties could not agree on whether a "patio/pergola" should be included in a holdback agreement that was part of the closing documents. The proposed agreement stated that the escrow agent would hold back a portion of the purchase price for items that were not yet completed prior to closing and that the money would be disbursed to Streamline after the work was completed. A "patio/pergola" was included in the initial holdback agreement. However, Swoboda refused to sign the original agreement unless the patio/pergola was removed. At trial, Swoboda testified that he requested the change pursuant to an oral agreement he made with Audrey on August 21, 2018, the day before the scheduled closing.

Audrey refused to sign the revised holdback agreement and later denied reaching the oral agreement described by Swoboda. Instead, Audrey signed the original holdback agreement. As a result of the impasse, the sale did not close. The next day, Audrey's daughter-in-law emailed Audrey's real estate agent stating that "[Steven] is now in charge of any negotiation or concerns related to this business transaction. [Audrey] has given him full authority to speak for her." Steven testified at trial that Audrey asked him to revive the transaction.

After Steven was put in charge of negotiations for the transaction, he spoke about pursuing legal action on multiple occasions. Audrey's real estate agent testified that, after the transaction failed to close, Steven told him he would "take Streamline Builders to the cleaners." Several days after the failed closing, Steven emailed the agent alleging Swoboda participated in a conspiracy to create fraudulent documents and committed intentional default, fraud, and breach of contract. Several days after that, Steven sent another email to the agent stating, "I am proceeding with the complaints with the licensing boards, criminal complaints for the theft of the $100,000 and

4

personal property will be filed of [sic] Friday and I had a conversation today with our Spokane attorneys about collecting all of our losses . . . ."

In the midst of these actions, Steven continued negotiations to close the transaction. A little less than a week after the failed closing, Steven sent an email to Audrey's real estate agent stating, "[j]ust talked with Audrey. She will do this only once and there will be no discussion or deviations." The email then listed eighteen conditions required for Audrey to move forward with closing and was signed "Audrey Chase." Steven's continued negotiations ultimately failed, and the transaction never closed.

Streamline later defaulted on its construction loan, and the home was purchased by a third party at a foreclosure sale. Audrey sued several parties involved with the property and transaction, including Streamline and Swoboda. In response, the other parties filed separate lawsuits or asserted their own counterclaims or third-party claims. The resulting litigation was complex, involving over a dozen parties and four consolidated cases.

## B. Streamline's third-party claim against Steven

Streamline and Swoboda were two of the parties that filed their own claims in response to Audrey's lawsuit. Specifically, they jointly filed a third-party complaint against Steven for tortious interference with a prospective economic advantage, alleging that Steven knew communications and correspondence demanding "construction modifications, price adjustments and disrupting the events leading to closing" would interfere with Streamline's contract with Audrey and cause economic damage to Streamline and Swoboda. Streamline and Swoboda also asserted claims against Steven for defamation and tortious interference with contract, but those claims are not at issue in this appeal.

The consolidated cases proceeded to a nine-day jury trial. At the close of Streamline and Swoboda's presentation of evidence, Steven moved for a directed verdict on the claim against him for tortious interference with a prospective economic advantage, arguing that "[t]here's simply not enough evidence in the record to submit the question to the jury of whether . . . [Steven] wrongfully interfered or whether that interference caused any harm to Streamline Builders . . . ." The district court denied the motion after determining there was "conflicting evidence . . . in terms of [Steven's] involvement and his purpose whether that was an intentional interference or not" and found that there was enough evidence to submit the claim to the jury. The jury returned a verdict against Steven on the claim for tortious interference with a prospective economic advantage and

5

awarded damages of $20,000. The district court entered a judgment against Steven, and he thereafter appealed to this Court, arguing that the district court erred in denying his motion for a directed verdict.

## II.     ISSUES ON APPEAL

1. Whether the district court erred by denying Steven's motion for a directed verdict.

2. Whether Streamline and Swoboda should be awarded attorney fees on appeal pursuant to Idaho Code section 12-121.

## III.     STANDARD OF REVIEW

"This Court reviews de novo a district court's decision to deny a motion for a directed verdict or motion for a judgment notwithstanding the verdict[,]" *Griff, Inc. v. Curry Bean Co.*, 138 Idaho 315, 319, 63 P.3d 441, 445 (2003), without giving special deference to the decision of the trial court, *Lands v. Sunset Manor, LP*, 173 Idaho 584, ___, 546 P.3d 670, 682 (2024) (quoting *Ackerschott v. Mountain View Hosp., LLC*, 166 Idaho 223, 229–30, 457 P.3d 875, 881–82 (2020)). "This Court may not reweigh the evidence or consider the witnesses' credibility, rather, this Court must accept the truth of all evidence against the moving party and draw all legitimate inferences therefrom in favor of the non-moving party." *Griff, Inc.*, 138 Idaho at 319, 63 P.3d at 445. "It is not a question of no evidence on the side of the non-moving party, but rather, whether there is substantial evidence upon which a jury could find for the non-moving party." *Polk v. Larrabee*, 135 Idaho 303, 311–12, 17 P.3d 247, 255–56 (2000). "Where a non-moving party produces sufficient evidence from which reasonable minds could find in its favor, a motion for directed verdict should be denied." *Lands*, 173 Idaho at ___, 546 P.3d at 683 (quoting *Ackerschott*, 166 Idaho at 230, 457 P.3d at 882).

## IV.     ANALYSIS

### A. Steven failed to preserve his agency argument for appeal because he did not present it to the district court as a basis for granting his motion for a directed verdict.

Steven argues that the district court erred in denying his motion for a directed verdict because, according to Idaho caselaw, a claim for tortious interference with a prospective economic advantage will only lie against a third party to the contract. Steven asserts that he acted as Audrey's agent for the business transaction and thus was not a third party to the contract. Therefore, he could not be held liable for tortiously interfering with Streamline and Swoboda's economic advantage.

This Court has held that a party must either renew its motion for a directed verdict at the close of all the evidence or file a motion for judgment notwithstanding the verdict ("JNOV") before

it can appeal the denial of a motion for a directed verdict. *Smith v. Sharp*, 85 Idaho 17, 27, 375 P.2d 184, 190 (1962) (holding that, if a motion for a directed verdict is renewed at the close of evidence and denied, "the moving party may claim such ruling as error on appeal"); *Christensen v. Stuchlik*, 91 Idaho 504, 508, 427 P.2d 278, 282 (1967) ("[O]n an appeal to this [C]ourt from a judgment entered in a jury case, before this [C]ourt will examine the record to resolve the issue framed by an attack on the sufficiency of the evidence to sustain the judgment, it is generally essential that such issue first be presented to the trial court for resolution by way of a timely motion for directed verdict, which motion, *if denied, <u>must</u> be renewed by a timely motion for judgment notwithstanding the verdict . . . .* " (emphasis added)). Steven did not renew his motion for a directed verdict at the close of all the evidence or file a motion for JNOV following the jury verdict. However, Streamline and Swoboda have not argued that Steven's failure to do so prevents us from considering the merits of this appeal.

Rather, Streamline and Swoboda claim that Steven failed to preserve this argument for appeal because he did not raise it before the district court in support of his motion for a directed verdict. Steven argues that he did preserve it for appeal, claiming that the argument that he was acting on Audrey's behalf "was a central premise of Steven's defense to the third-party complaint[.]" It is true that, throughout the proceedings below, Steven argued that he sought to assist his mother, that his and Audrey's interests were aligned, and that he was acting at her direction. However, as will be discussed below, Steven advanced these arguments in support of a different theory than the one he now raises on appeal. For this reason, we conclude that Steven failed to preserve the argument for appeal, and we therefore affirm the district court's order denying Steven's motion for a directed verdict.

"Appellate court review is limited to the evidence, theories and arguments that were presented below." *Nelson v. Nelson*, 144 Idaho 710, 714, 170 P.3d 375, 379 (2007) (quoting *Obenchain v. McAlvain Constr., Inc.*, 143 Idaho 56, 57, 137 P.3d 443, 444 (2006)). "This Court 'will not hold that a trial court erred in making a decision on an issue or a party's position on an issue that it did not have the opportunity to address.' " *Gestner v. Divine*, 171 Idaho 159, 174, 519 P.3d 439, 454 (2022) (quoting *State v. Gonzalez*, 165 Idaho 95, 99, 439 P.3d 1267, 1271 (2019)). Rather, "[t]o be properly preserved for appellate review, 'both the issue and the party's position on the issue must be raised before the trial court.' " *Eagle Springs Homeowners Ass'n, Inc. v. Rodina*, 165 Idaho 862, 869, 454 P.3d 504, 511 (2019) (cleaned up) (quoting *Gonzalez*, 165 Idaho

at 99, 439 P.3d at 1271). Although the legal arguments on the issues may be refined, "in fairness to the district court and the opposing party, [this Court] cannot usurp the district court's role by deciding new legal issues in the first instance. *In other words, '[a] groomed horse is expected on appeal, but a different horse is forbidden.'* " *Siercke v. Siercke*, 167 Idaho 709, 716, 476 P.3d 376, 383 (2020) (second alteration in original) (emphasis added) (quoting *Gonzalez*, 165 Idaho at 99, 439 P.3d at 1271). An issue is not preserved when a party argues under a different theory on appeal than the one argued before the district court. *Kosmann v. Dinius*, 165 Idaho 375, 386, 446 P.3d 433, 444 (2019) ("[I]ssues not raised below will not be considered by this [C]ourt on appeal, and the parties will be held to the theory upon which the case was presented to the lower court." (first alteration in original) (quoting *State v. Cohagan*, 162 Idaho 717, 721, 404 P.3d 659, 663 (2017))).

In arguing his motion for a directed verdict to the trial court, Steven asserted that the court should enter judgment in his favor because there was no evidence indicating that he "had an improper objective to harm Mr. Swoboda in Mr. Swoboda's relationship with Audrey." He argued he was simply assisting his mother, at her direction. Because he did not have an improper objective, he argued his actions could not have been wrongful. An assessment of Steven's argument below compared to his argument on appeal requires an understanding of the elements of a claim for tortious interference with prospective economic advantage:

> To establish a claim for intentional interference with a prospective economic advantage, [a plaintiff] must show (1) the existence of a valid economic expectancy, (2) knowledge of the expectancy on the part of the interferer, (3) intentional interference inducing termination of the expectancy, (4) the interference was wrongful by some measure beyond the fact of the interference itself, and (5) resulting damage to the plaintiff whose expectancy has been disrupted.

*Cantwell v. City of Boise*, 146 Idaho 127, 137–38, 191 P.3d 205, 215–16 (2008). That an intentional interference was wrongful "may be shown by proof that either: (1) the defendant had an improper motive to harm the plaintiff; or (2) the defendant used a wrongful means to cause injury to the prospective advantage." *Yoakum v. Hartford Fire Ins. Co.*, 129 Idaho 171, 178, 923 P.2d 416, 423 (1996).

Generally, "a party cannot tortiously interfere with its own contract." *BECO Constr. Co. v. J-U-B Eng'rs, Inc.*, 145 Idaho 719, 724, 184 P.3d 844, 849 (2008). Failure to establish that an "alleged interferer [is] a third party to the contractual relationship" will result in a dismissal of the claim. *Cantwell*, 146 Idaho at 138, 191 P.3d at 216. Accordingly, a tortious interference claim will

fail when it is raised "against an agent of a party who was acting within the scope of his authority." *BECO Constr.*, 145 Idaho at 725, 184 P.3d at 850.

As we noted above, Steven did assert below that he was assisting his mother and acting on her behalf, but his assertions were made in furtherance of his argument that he had no improper motive, not in furtherance of an argument that he was acting as an agent to a party to the contract. His trial brief, in which he argued for a directed verdict, claimed that he was entitled to entry of a directed verdict on the claim for tortious interference with prospective economic advantage because:

> [A]ll the evidence shows that [Steven] only sought to assist his mother in the transaction and for her new home to be properly built. Their interests were aligned. . . . Thus, any action he took expressly was authorized by her. He could not interfere. [Steven] was pursing the interests of his mother, at her direction. *Under these facts, there can be no improper motive.*

(Emphasis added.) He further argued that "none of [Steven's] actions *were wrongful or made with a purpose to harm Mr. Swoboda or Streamline*[,]" in part because "[Steven's] objectives were to assist his mother in acquiring a well-built home for the money she was spending, and to ensure that her interests were protected." (Emphasis added.) During oral argument on Steven's motion for a directed verdict, he argued:

> [O]ne of the required elements for a tortious interference claim is that [Steven] had to have an improper objective or purpose to harm the plaintiff.
>
> But, in this case, the evidence is that [Steven] was only seeking to assist his mother in the transaction and for her new home to be properly built according to the contracted specifications. So [Steven] and his mother in that regard had interests that were aligned with one another. And that was particularly true after the failed closing when [Audrey] put [Steven] in charge of negotiations regarding the transaction.
>
> So any actions that he took after that point were expressly authorized by her *and so he had no improper motive as required for a tortious interference claim.*

(Emphasis added.)

Relying on these assertions, Steven argued that he did not wrongfully interfere *because he did not have an improper motive* to harm Swoboda and Streamline. Put differently, he argued that his purpose in becoming involved in the transaction was to assist his mother, not to harm Streamline and Swoboda. As such, he argued that his motives were not improper, and he did not act wrongfully.

9

On appeal, however, Steven relies on the assertion that he was acting on his mother's behalf to advance a different theory: that, as his mother's agent, *he was not a third party to the contract* and therefore he could not wrongfully interfere. Steven asserts that because his involvement in the transaction "was at all times on behalf of and at the direction of Audrey[,]" that Steven was Audrey's agent in the transaction. He then argues that because Steven "was an agent of a party to the contract and was acting for the benefit of such party, [he was] not a stranger to the contract and therefore cannot be liable for tortious interference with such contract." (Alterations in original.) (First quoting *BECO Constr.*, 145 Idaho at 725, 184 P.3d at 850; then citing *Cantwell*, 146 Idaho at 138, 191 P.3d at 216.)

While Steven argued below that he was acting on his mother's behalf and at her direction, he made those assertions in support of a different theory than the one he now asserts on appeal. Below, he argued that because he was acting at his mother's direction, he could not have an improper motive to harm Streamline or Swoboda. On appeal, he now argues that because he was acting at his mother's direction, he could not be a third party to the contract and therefore cannot be held liable on the claim at all. Rather than presenting a groomed horse on appeal, Steven has introduced a Trojan Horse that attempts to introduce a new legal theory wrapped in the same factual packaging.

That Steven is arguing a different theory on appeal is further evidenced by his requested jury instructions. If Steven's argument below was that he could not have wrongfully interfered because he was acting as an agent of his mother, one would expect to see jury instructions concerning an agency defense. However, Steven did not request jury instructions concerning whether Steven was in an agency relationship with Audrey or stating that a tortious interference claim fails against an agent of the party acting within the scope of his agency.

We conclude that Steven failed to preserve his agency/third party to the contract argument for appeal because he failed to present it to the district court in support of his motion for a directed verdict. We therefore affirm the district court's order denying Steven's motion for a directed verdict.

We also note that, even if Steven had presented the agency/third party to the contract argument to the district court, the motion would have failed because there was adequate evidence presented to submit the issue to the jury. Streamline and Swoboda presented facts that conflict

with the assertion that Steven was acting on Audrey's behalf and under her authority, thus providing sufficient evidence for the jury to rule in Streamline and Swoboda's favor.

"An agent is a person who has been authorized to act on behalf of a principal towards the performance of a specific task or series of tasks." *Humphries v. Becker*, 159 Idaho 728, 735, 366 P.3d 1088, 1095 (2016). The agency relationship is created when the principal either expressly, impliedly, or apparently grants the agent authority to act. *Id*. "[W]here an agency relationship exists, the principal has the right to control the agent." *Id.* at 735–36, 366 P.3d at 1095–96. "Determining the *existence* of an agency relationship involves the embedded question of determining the scope of the relationship." *Eagle Rock Timber, Inc. v. Teton County*, 172 Idaho 172, 178, 531 P.3d 488, 494 (2023) (citing *Bailey v. Ness*, 109 Idaho 495, 498, 708 P.2d 900, 903 (1985)).

Swoboda and Streamline presented evidence at trial that contradicts Steven's assertion that he was acting as Audrey's agent. For example, Swoboda testified at trial that, in response to the front bedroom of the home being mistakenly installed with carpet rather than laminate flooring, Audrey "said that she was okay if the carpet -- she preferred the carpet, it was her kids that wanted laminate . . . ." This calls into question whether Steven was acting under Audrey's control because the testimony suggests he was directing Swoboda to perform the project contrary to Audrey's wishes. Further, emails sent by Steven were typically signed with just his name, which suggests that he was speaking on his own behalf. Although Steven alleges that his emails were sent on behalf of his mother, "[i]t is the jury's function to assess the demeanor of the witnesses and make a determination of credibility." *Polk v. Larrabee*, 135 Idaho 303, 311, 17 P.3d 247, 255 (2000) (quoting *State v. Allen*, 129 Idaho 556, 558, 929 P.2d 118, 120 (1996)). As such, it was for the jury to decide which emails were actually sent under Audrey's direction.

Moreover, some evidence suggested that Audrey's first explicit grant of authority to Steven to act on her behalf came after the failed closing, thus calling into question whether he was acting as Audrey's agent prior to that time. An email from Steven's wife to Audrey's real estate agent one day after the failed closing stated, "[a]s you have heard from Audrey and [Steven], *he is now in charge* of any negotiations or concerns related to this business transaction." (Emphasis added.) Construing the facts in the light most favorable to Swoboda and Streamline, there was not only sufficient evidence to submit the claim for tortious interference with prospective economic advantage to the jury, but there was also sufficient evidence to support an unfavorable jury verdict.

11

**B. Attorney Fees**

Swoboda and Streamline argue that they are entitled to attorney fees under Idaho Code section 12-121. Attorney fees can be awarded to the prevailing party on appeal at the discretion of the Court if the appeal was "brought, pursued or defended frivolously, unreasonably or without foundation." I.C. § 12-121; *BrunoBuilt, Inc. v. Strata, Inc.*, 166 Idaho 208, 222, 457 P.3d 860, 874 (2019) (citation omitted). On appeal, Steven presents a single, unpreserved argument. Because he failed to present the position to the district court that he now argues for on appeal, his appeal is unreasonable and without foundation. *See Herr v. Herr*, 169 Idaho 400, 405, 496 P.3d 886, 891 (2021). Streamline and Swoboda are the prevailing parties in this appeal, and we award them reasonable attorney fees on appeal pursuant to section 12-121.

## V. CONCLUSION

For the reasons stated above, we affirm the judgment of the district court and award attorney fees on appeal to Streamline and Swoboda pursuant to Idaho Code section 12-121.

Chief Justice BEVAN, Justices BRODY and MOELLER, and Pro Tem Justice EVANS CONCUR.

12