806 P.2d 445

**STATE of Idaho, Plaintiff–Respondent,**

v.

**Jeffrey W. CREA, Defendant–Appellant.**

**No. 18371.**

Supreme Court of Idaho,
Moscow, October 1990 Term.

March 1, 1991.

Clark & Feeney, Lewiston, for defendant-appellant. Douglas L. Mushlitz argued.

Jim Jones, Atty. Gen., Myrna A.I. Stahman, Deputy Atty. Gen. (argued), Boise, for plaintiff-respondent.

BOYLE, Justice.

In this criminal case involving a conditional plea of guilty and conviction of driving under the influence, we are called upon to determine whether the district court erred in denying defendant Jeffrey Crea's motion to suppress the results of an alcohol breath test.

Crea was arrested by officers of the Lewiston Police Department on December 29, 1988, and charged with driving under the influence in violation of I.C. § 18–8004 and § 18–8005(3). The police administered Crea a breath test using an "Intoximeter 3000" alcohol measurement instrument.

Crea filed a motion to suppress and a motion in limine to prevent admission of the results of the breath test into evidence at trial on the grounds that the Intoximeter is not scientifically accurate nor generally accepted as a testing device for detecting ethyl alcohol and blood alcohol content, and because the State of Idaho had previously deactivated the Taguchi sensor cell component part of the Intoximeter.[1] An evidentiary hearing was held on Crea's motions in which extensive expert testimony was submitted.

Following the district court's denial of his motions, Crea entered a conditional plea of guilty pursuant to I.C.R. 11(a)(2) and 11(d), and this appeal followed. The legal issues presented require us to determine whether the district court erred in admitting into evidence certain expert testimony concerning the function and use of the Intoximeter, its reliability and accuracy in light of the Taguchi cell being deactivated, and whether the evidence supports the district court's factual findings.

I.

SCOPE OF JUDICIAL REVIEW

■ With respect to admission of evidence, the trial court has broad discretion and its judgment in the fact finding role will only be disturbed on appeal when there has been a clear abuse of discretion. *State v. Giles,* 115 Idaho 984, 772 P.2d 191 (1989); *State v. Crook,* 98 Idaho 383, 565 P.2d 576 (1977); *State v. Griffith,* 94 Idaho 76, 481 P.2d 34 (1971).

■ At the trial court level the trier of fact, in this case the district court judge, is the arbiter of conflicting evidence. *Ran-*

---

1. The Intoximeter 3000, the function of the Taguchi cell, and the effect of it being deactivated is succinctly described in *State v. Wilson,* 116 Idaho 771, 772, 780 P.2d 93, 94 (1989), and will not be restated herein. Likewise, a detailed discussion of the characteristics, theory, operation and scientific acceptability of the Intoximeter 3000 can be found in *People v. Jones,* 118 Misc.2d 687, 461 N.Y.S.2d 962 (1983). *See* footnote 2, *State v. Hartwig,* 112 Idaho 370, 732 P.2d 339 (Ct.App.1987). Simply stated, the Intoximeter 3000 is a breath testing device which utilizes infrared energy and electric current to detect the presence of ethyl alcohol (ethanol) in the breath of the driver.

*kin v. Rankin,* 107 Idaho 621, 691 P.2d 1236 (1984). It is the province of the district judge as the trier of fact to weigh the conflicting evidence and testimony and to judge the credibility of witnesses. *Pointner v. Johnson,* 107 Idaho 1014, 695 P.2d 399 (1985); *Glenn v. Gotzinger,* 106 Idaho 109, 675 P.2d 824 (1984); *Jensen v. Westberg,* 115 Idaho 1021, 772 P.2d 228 (Ct.App. 1988). In view of this role, the trial court's findings of fact will be liberally construed in favor of the judgment entered. *Rueth v. State,* 103 Idaho 74, 644 P.2d 1333 (1982); *Jensen v. Bledsoe,* 100 Idaho 84, 593 P.2d 988 (1979). It is well established that a trial court's factual findings which are based on substantial although conflicting evidence will not be disturbed on appeal. The credibility and weight to be given evidence is in the province of the trier of fact, and the findings made by the trial judge will not be set aside unless clearly erroneous. *Pointner v. Johnson,* 107 Idaho 1014, 695 P.2d 399 (1985); *MacNeil v. Minidoka Memorial Hosp.,* 108 Idaho 588, 701 P.2d 208 (1985); *State v. Campbell,* 104 Idaho 705, 662 P.2d 1149 (1983).

## II.

### INTOXIMETER 3000 APPROVED AS ALCOHOL TESTING INSTRUMENT

The Intoximeter 3000 is not a stranger to the appellate courts of this and other states, and has been the source of considerable appellate review. *State v. Wilson,* 116 Idaho 771, 780 P.2d 93 (1989); *State v. Hartwig,* 112 Idaho 370, 732 P.2d 339 (Ct. App.1987); *State v. Nichols,* 110 Idaho 823, 718 P.2d 1261 (Ct.App.1986); *People v. Jones,* 118 Misc.2d 687, 461 N.Y.S.2d 962 (1983).

■ In *State v. Wilson,* 116 Idaho 771, 780 P.2d 93 (1989), we held that the Intoximeter 3000 with the Taguchi cell deactivated was not required to be certified by the Department of Health and Welfare, and that it was approved by the Department for use as a direct testing instrument. In *Wilson* we held that any deficiencies in the accuracy of the measurement of ethyl alcohol that are occasioned by the lack of a Taguchi cell may be attacked by cross-ex-

amination or by independent evidence. 116 Idaho at 774, 780 P.2d at 96. The record before us clearly demonstrates that the effectiveness of the Intoximeter 3000 with a deactivated Taguchi sensor cell was subject to extensive cross-examination and independent evidence as contemplated in *State v. Wilson.* Our review of the record satisfies us that the district court properly considered the issues as being evidentiary in nature and Crea was permitted to attack any deficiencies in the accuracy of the Intoximeter through cross-examination and by the direct evidence of his expert witness.

■ In *State v. Hartwig,* 112 Idaho 370, 732 P.2d 339 (Ct.App.1987), the Court of Appeals observed that scientific acceptance of the Intoximeter 3000 is well established in Idaho and many other jurisdictions, including Alaska, Georgia, New Hampshire, New York, Tennessee, Wisconsin, Wyoming, and country-wide acceptance in England. *Id.,* at 112 Idaho 375, 732 P.2d at 344; *see also State v. Nichols,* 110 Idaho 823, 718 P.2d 1261 (Ct.App.1986). We recognize and agree that the Intoximeter 3000 has gained scientific acceptance in Idaho as noted in *State v. Wilson,* and in numerous other jurisdictions as observed in *State v. Hartwig,* however, use of test results from the Intoximeter 3000 in the courts of this state remains subject to proper foundation and evidence being presented.

## III.

### TRIAL COURT'S FINDINGS SUPPORTED BY THE EVIDENCE

■ In the hearing on Crea's motions, the district court considered extensive evidence from both parties as to the reliability and accuracy of the Intoximeter 3000 with a deactivated Taguchi sensor cell. The State presented the testimony of an expert from the Forensic Services Bureau of the Department of Law Enforcement in support of the Intoximeter's reliability and accuracy with the Taguchi cell disconnected. Crea presented the expert testimony of a chemistry professor from the University of

Idaho who testified that the Intoximeter 3000 with the deactivated Taguchi cell was not a scientifically accurate test for the measurement of ethyl alcohol. In addition, the district court considered the stipulated facts, numerous scientific articles and studies on the effects of acetone and other substances on the capability of the Intoximeter 3000 to measure blood alcohol content without the Taguchi cell connected.

After considering all the evidence and testimony presented at the hearing, the district court denied Crea's motions and stated:

> The evidence before the court after review and after going over the testimony is overwhelming. I conclude that the removal of the Taguchi cell does not affect the scientific reliability of the Intoximeter 3000. The results of that test will be admissible.

Although there are cases from other jurisdictions supporting Crea's legal position, *People v. Jones*, 118 Misc.2d 687, 461 N.Y. S.2d 962 (1983), the issue presented to us on appeal in the instant case is essentially an evidentiary question. Crea urges us to adopt the holding of *People v. Jones* and to require the more restrictive test for admissibility of scientifically derived evidence as pronounced in *Frye v. United States*, 293 F. 1013 (D.C.Cir.1923). As noted in *People v. Jones*, the New York courts have consistently employed the *Frye v. United States* criterion to determine the admissibility of scientifically derived evidence.[2] The *Frye* criterion requires an analysis of whether the process is "sufficiently established to have gained general acceptance in the particular field in which it belongs?" 461 N.Y.S.2d at 967, citing 293 F. at 1014. We decline to adopt the *Frye* criterion as the basis for admission of scientifically derived evidence as relates to the issues presented in this appeal.

As such, we have reviewed the record before us to determine whether the district court erred in admitting the evidence, and whether there is substantial evidence to support its factual findings.

### A. Admissibility of Testimony and Evidence

Crea asserts that the district court erred in admitting certain expert opinion evidence as to the scientific acceptance and reliability of the Intoximeter 3000. We disagree.

The Idaho Rules of Evidence allow admission of the evidence presented to the district court in the hearing on Crea's motions. Rule 401 defines relevant evidence as any evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence. Rule 402 states the general rule that all relevant evidence is admissible.

The admissibility of expert opinion testimony and the admission of scientific evidence are governed by the Idaho Rules of Evidence and the decisions of this Court. In *IHC Hosp. v. Board of Commrs.*, 108 Idaho 136, 697 P.2d 1150 (1985), we held that a witness must be properly qualified as an expert prior to giving expert testimony. Whether a witness is sufficiently qualified as an expert is a matter largely within the sound discretion of the district court. *Sidwell v. William Prym, Inc.*, 112 Idaho 76, 730 P.2d 996 (1986). The admissibility of expert opinion testimony is discretionary with the trial court and will not be abused absent a showing of an abuse of discretion. *Id.*

Our review of the record demonstrates that adequate foundation was laid to qualify the expert witnesses and their opinions were properly admitted into evidence by

---

**2.** In *State v. Iwakiri*, 106 Idaho 618, 682 P.2d 571 (1984), we expressly rejected several per se evidentiary rules, one of which was the *Frye* rule, and adopted our own standard on the admissibility of certain scientific evidence. In *Iwakiri*, a case involving hypnotically induced testimony, *Frye v. United States* was cited as establishing a rule which "conditions the admissibility of evidence based on a new scientific method of proof on a showing that the technique has been generally accepted as reliable in the scientific community in which it developed." 106 Idaho at 623, 682 P.2d at 576.

the district court. I.R.E. 702.[3] The expert witnesses were qualified, adequate foundation was presented and the district court did not err nor abuse his discretion in allowing the testimony.

Our review of the record demonstrates that the district court, in addition to hearing the testimony of the experts, inquired in an attempt to clarify his understanding of the evidence. After hearing and weighing the evidence the district court found that the evidence was "overwhelming" in support of the reliability and accuracy of the Intoximeter 3000 test results.

Our independent review of the record, although containing conflicting evidence, satisfies us that the district court's finding is supported by the record and that there is substantial competent evidence to support the factual findings. The district court's findings are not clearly erroneous and we accept those findings and conclusions.

The district court did not err in denying Crea's motion to suppress or his motion in limine. Accordingly, the judgment of conviction is affirmed. Costs to respondent.

BAKES, C.J., and JOHNSON and McDEVITT, JJ. concur.

BISTLINE, Justice, dissenting.

Once again this Court is asked to evaluate the reliability of the Intoximeter 3000 with its Taguchi cell removed. The majority points to *State v. Wilson*, 116 Idaho 771, 780 P.2d 93 (1989), and *State v. Hartwig*, 112 Idaho 370, 732 P.2d 339 (Ct.App.1987), to support its view that the Intoximeter 3000 has gained scientific acceptance in Idaho. In a separate opinion in *Wilson*, I discussed some of the problems with using the Intoximeter 3000 without the Taguchi cell, and rather than repeat those points any interested reader is directed to that opinion. *Wilson*, 116 Idaho at 774, 780 P.2d at 96 (Bistline, J. dissenting). It is also worth noting that the breath test used in the *Hartwig* case was obtained by use of the Intoximeter 3000 before the Taguchi cell was removed; therefore, the *Hartwig* opinion is no longer relevant.

The importance of the removal of the Taguchi cell from the Intoximeter 3000 was well illustrated in *People v. Jones*, 118 Misc.2d 687, 461 N.Y.S.2d 962 (1983):

The Intoximeter 3000 is a breath-testing device which utilizes infrared energy and electrical current to detect the presence of ethyl alcohol (ethanol) in the breath of a driver.

. . . .

The device gives a reading of the amount of interfering substance in the subject's breath by comparing the amount of infrared energy striking the detector after the two beams pass through the chambers.

. . . .

At this point, it is impossible to conclude that the absorbing substance is ethyl alcohol, because in addition to ethyl alcohol, there are other substances which absorb radiation at 3.39 microns.

In order to enable the Intoximeter 3000 to give a specific reading for ethyl alcohol, another device is necessary. Thus, the Intoximeter 3000, in addition to its infrared analysis of breath based on the Beer–Lambert Law of Absorption, also contains a semi-conductor (a Taguchi sensor) by which it is able to distinguish ethyl alcohol from other substances which absorb infrared radiation in the area of 3.39 microns.

. . . .

If infrared analysis were the only process incorporated in the Intoximeter 3000, the results of the test would be inadmissable because the test would lack specificity in light of the numerous substances in addition to ethyl alcohol, which absorb infrared energy at the wavelength of 3.39 microns.

461 N.Y.S.2d at 963–67.

By removing the Taguchi cell from the Intoximeter 3000 the state has created seri-

---

**3.** Rule 702 of the Idaho Rules of Evidence provides:

**Testimony by experts.**—If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion or otherwise.

ous doubts as to the reliability of the device. Consequently, Intoximeter 3000 test results which were obtained with the Taguchi cell disconnected should not be admissible as evidence in a criminal prosecution.