948 P.2d 174

**STATE of Idaho, Plaintiff–Respondent,**

v.

**Charley THOMPSON, Jr.,
Defendant–Appellant.**

No. 23743.

Court of Appeals of Idaho.

Nov. 13, 1997.

Nicholas T. Bokides, Weiser, for defendant-appellant.

Alan G. Lance, Attorney General; Catherine O. Derden, Deputy Attorney General, Boise, for plaintiff-respondent.

SCHWARTZMAN, Judge.

Charley Thompson Jr. appeals from a district court decision affirming the magistrate's conviction of Thompson under I.C. § 36–1402(d) for hunting while his license to hunt was revoked. Thompson argues that the evidence was insufficient to support his conviction. For the reasons stated below, we affirm.

# I

## FACTS AND PROCEDURAL BACKGROUND

Charley Thompson was convicted on January 23, 1995, of possessing unlawfully taken game, I.C. § 36–502. As part of the sentencing under that conviction, Thompson's hunting license was revoked and he was not allowed to hunt or purchase a hunting license until January 1, 1996. In late August of 1995, Officer Lester McDonald of the Idaho Fish and Game Department, stationed in the Council area, heard from a fellow conservation officer that Thompson was currently working in McDonald's area, and further, that if Thompson was working there he was probably hunting as well.

Following this lead, Officer McDonald discovered that Thompson was working for a logging company, building a road in the mountains. In the early afternoon hours of September 9, 1995, Officer McDonald came across Thompson at a logging camp, sitting in the back of a pickup truck. McDonald, dressed in plain clothes, passed himself off as a hunter and engaged Thompson in conversation. Thompson stated that he was waiting for some of his co-workers to return to the camp so that they could all go elk hunting together, but that he wasn't sure if he would be hunting himself, or if he was just going to go along to "call" for his friends. Thompson also described in detail his past hunting exploits as well as the particulars of the type of compound bow and arrows he used. Thompson mentioned that he had seen and heard a lot of elk during the time period he had been working in the logging camp. Towards the end of the conversation Thompson advised that, if his co-workers didn't arrive soon, he was going to go hunting without them. After the conversation ended, McDonald proceeded down the road for about a quarter mile and then stopped and walked to an area where he could conduct surveillance.

After about half an hour, one of Thompson's companions arrived at the camp and both men began to get their hunting gear together and change into camouflage clothing. Thompson changed from a light-colored

t-shirt to a darker colored one. He put on a camouflage baseball cap and a camouflage jacket, and obtained his compound bow and arrows from the cab of his pickup. After the men were dressed and ready, they began to walk hurriedly down the road.

Officer McDonald then came up from behind and surprised the men. Thompson was wearing the aforementioned camouflage clothing, carrying his compound bow and arrows,[1] had a string release aid wrapped around his wrist[2] and there was an elk bugle call in his mouth. McDonald asked the men for their hunting licenses.

After some initial confusion, Thompson admitted that he did not have a hunting license, but protested that he was not hunting. Thompson told Officer McDonald that he had borrowed the compound bow for target practice because he was thinking of purchasing it, and that he had borrowed the camouflage jacket and the elk call. McDonald then issued Thompson a citation under I.C. § 36–1402(d) for hunting while his license to hunt was revoked.

After a court trial, the magistrate found Thompson guilty, fined him $1000 plus court costs and sentenced him to 180 days in jail with 150 suspended. Thompson appealed to the district court which affirmed the decision of the magistrate. Thompson timely appeals.

## II

## ANALYSIS

### A. Standard Of Review

When the district court acts in an appellate capacity on appeal from the magistrate division, we review the record independently of, but with due regard for, the decision of the district court. *State v. Bitt*, 118 Idaho 584, 585 n. 1, 798 P.2d 43, 44 n. 1 (1990); *State v. Van Sickle*, 120 Idaho 99, 101, 813 P.2d 910, 912 (Ct.App.1991). Based upon our review of the magistrate's findings and conclusions, we will affirm or reverse the district court's appellate decision accordingly.

*State v. Van Sickle*, 120 Idaho 99, 101, 813 P.2d 910, 912 (Ct.App.1991); *In re Matter of McNeely*, 119 Idaho 182, 186, 804 P.2d 911, 915 (Ct.App.1990).

In determining the sufficiency of the evidence, the applicable standard of review is whether there was substantial evidence upon which any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *State v. Reyes*, 121 Idaho 570, 572, 826 P.2d 919, 921 (Ct.App.1992). The trier of fact, in this case the magistrate, is the arbiter of conflicting evidence. *Rankin v. Rankin*, 107 Idaho 621, 623, 691 P.2d 1236, 1237 (1984); *State v. Crea*, 119 Idaho 352, 353–54, 806 P.2d 445, 446–47 (1991). It is the province of the magistrate to weigh the conflicting evidence and testimony and to judge the credibility of witnesses. *Pointner v. Johnson*, 107 Idaho 1014, 1018, 695 P.2d 399, 403 (1985). This standard of appellate review is salutary in effect, and reflects the view that deference must be accorded to the special opportunity to assess and weigh the credibility of the witnesses who appear before the court personally. *Rueth v. State*, 103 Idaho 74, 77, 644 P.2d 1333, 1336 (1982). Thus, the trial court's findings which are based on substantial, although conflicting, evidence will not be disturbed on appeal. The credibility and weight to be given evidence is in the province of the trier of fact and the findings made by the trial judge will not be set aside unless clearly erroneous. *Pointner* at 1018, 695 P.2d at 403 (1985); *Crea* at 354, 806 P.2d at 447 (1991). Finally, all evidence is considered in the light most favorable to the state. *State v. Knutson*, 121 Idaho 101, 104, 822 P.2d 998, 1001 (Ct.App.1991).

### B. Thompson's Conviction For Hunting While His License Was Revoked Was Supported by Substantial Evidence.

Thompson was convicted by the magistrate under I.C. § 36–1402(d) for hunting while his license to hunt was revoked.

---

1. In his quiver Thompson was carrying four arrows, two of which were twenty-seven-inch-long broadhead arrows used to kill elk.

2. Officer McDonald testified that a bow string release aid assists in holding and drawing greater poundages as well as getting smoother releases for better shooting accuracy.

On appeal, Thompson asserts that there was insufficient evidence for the magistrate to have found the essential elements of the crime beyond a reasonable doubt. If the evidence is insufficient to support a guilty verdict, the conviction must be set aside. *State v. Nastoff,* 124 Idaho 667, 671, 862 P.2d 1089, 1093 (Ct.App.1993). Thompson does not contest the fact that his hunting license had been revoked for earlier violations, but specifically argues that the state did not prove beyond a reasonable doubt that Thompson was engaging in "hunting."

I.C. § 36–1402(d) states, in pertinent part: "It shall be a misdemeanor for any person to hunt, fish, or trap or purchase a license to do so during the period of time for which such privilege is revoked." An explicit statutory definition of "hunting" is provided in I.C. § 36–202(i):

"Hunting" shall mean chasing, driving, flushing, attacking, pursuing, worrying, following after or on the trail of, shooting at, stalking, or lying in wait for, any wildlife whether or not such wildlife is then or subsequently captured, killed, taken, or wounded. Such term does not include stalking, attracting, searching for, or lying in wait for, any wildlife by an unarmed person solely for the purpose of watching wildlife or taking pictures thereof.

Thompson argues that the state failed to present any evidence that, at the time of his citation, he was engaging in any activity which would fall under the statutory definition of "hunting." Thompson contends that there was no evidence of chasing, driving, flushing, worrying, shooting at, stalking, or lying in wait for, wildlife. This contention is based upon the following facts: (1) that the officer did not see Thompson use the elk call; (2) that there was no indication that Thompson's actions had any effect on local wildlife; and (3) that the logging road upon which

Thompson was apprehended did not contain any elk trails or any other wildlife.

Thompson makes much of the following statement made by the state at trial:

[I]t's the State's contention that he was pursuing elk. He indicated that he was going to go hunting and did leave the camp. He was 60 or 70 yards away with all the gear and in the area where elk were, and it's our contention that he was pursuing elk.

Quoting from Webster's Dictionary,[3] Thompson maintains that the state improperly stretched the definition of "pursuing" in order to convict him and that his actions in no way rise to the level of "hunting."

We disagree. Thompson was apprehended hiking quickly down a road in the woods dressed in camouflage clothing, carrying nearly all the necessary accoutrements of a hunter, including an elk call which protruded from his lips. Furthermore, just half an hour prior, Thompson had freely stated that he was waiting for his co-workers so that he could go hunting, but that, if the co-workers didn't arrive soon, that he was going hunting without them.

 Thus, although the record reveals conflicting evidence in this case, there was sufficient evidence for the magistrate to conclude that Thompson was, indeed, "hunting" within the statutory meaning of the term.[4] Thompson's judgment of conviction is, accordingly, affirmed.

LANSING, C.J., and PERRY, J., concur.

---

3. Thompson states that the 1991 Deluxe Edition of Webster's Dictionary defines "pursuing" as follows: "To follow in order to capture, overtake, etc.; to harass 'someone' persistently; to inflict persistent intentions on someone; to continue with; to engage in; to go on talking about."

4. We note that in construing a statute, a court should take into consideration the reason for the law, that is, the object and the purpose of the law

should be analyzed, as well as the legislative intention in its enactment. *State v. Bowman,* 40 Idaho 470, 476, 235 P. 577 (1925). I.C. § 36–202(i) when read in conjunction with § 36–1402(d) does not require that a person must actually be apprehended in the act of shooting at an animal in order to be considered "hunting." In construing the statute defining "hunting" we aim to give it a sensible construction as will

effectuate legislative intent, and, if possible, avoid an absurd conclusion. *Hartman v. Meier,* 39 Idaho 261, 266, 227 P. 25, 26 (1924). Perhaps the magistrate recalled the familiar aphorism (here paraphrased): *If he looks like a hunter, walks like a hunter, talks like a hunter and has an elk bugle call in his mouth, chances are he's a hunter.*